1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEPHENIE J. WHITE,

11              Plaintiff,                    No. CIV S-05-2407 DAD

12        v.

13   MICHAEL J. ASTRUE,                    <u>ORDER</u>
     Commissioner of Social Security,[1]
14
                Defendant.
15   _____/

16              This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion

18   for summary judgment.  For the reasons explained below, the decision of the Commissioner of

19   Social Security (Commissioner) is reversed and this case is remanded for calculation of benefits.

20                          **PROCEDURAL BACKGROUND**

21              In May and June 2000, plaintiff Stephenie J. White filed applications for Social

22   Security Disability Insurance benefits under Title II and Supplemental Security Income (SSI)

23   benefits under Title XVI of the Social Security Act (Act), alleging disability due to the residual

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

1    effects of pancreatic surgery, including severe pain.  (Transcript (Tr.) at 70-72, 74-87.)  The

2    Commissioner denied the applications initially and on reconsideration.  (Tr. at 58-61, 63-68.)

3    Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on

4    July 11, 2002, at which time plaintiff was represented by counsel.  (Tr. at 33-53, 62.)  In a

5    decision issued on August 16, 2002, the ALJ determined that plaintiff was not disabled.  (Tr. at

6    6-16.)  On August 22, 2002, plaintiff requested review by the Appeals Council.  (Tr. at 5.)

7           While plaintiff's request for review was pending, plaintiff filed new applications

8    for benefits under Title II and Title XVI in September 2002.  (Tr. at 338-40, 568-70.)  The new

9    applications were denied on December 6, 2002.  (Tr. at 327-30, 571-75.)  Plaintiff requested

10   reconsideration on December 20, 2002.  (Tr. at 331.)

11          On January 13, 2003, the Appeals Council declined review of the ALJ's August

12   16, 2002 decision.  (Tr. at 3-4.)  Plaintiff sought judicial review of the Commissioner's final

13   decision on her initial applications by filing a case in this court on April 3, 2003, White v.

14   Comm'r, case No. CIV S-03-0669 GGH (E.D. Cal.).

15          On April 11, 2003, plaintiff's request for reconsideration of the denial of her

16   subsequent applications was denied.  (Tr. at 332-36, 576-81.)  On June 6, 2003, plaintiff

17   requested a hearing before an ALJ.  (Tr. at 337.)

18          By stipulation and order filed in case No. CIV S-03-0669 GGH on November 20,

19   2003, the case was remanded for administrative proceedings requiring the ALJ to (1) further

20   evaluate the nature and severity of plaintiff's mental impairment, (2) obtain a mental health

21   examination with psychological testing and a medical source statement regarding plaintiff's

22   residual functional capacity, (3) consider the effects of plaintiff's mental impairment on her

23   ability to perform daily activities, interact socially, and maintain concentration, persistence, and

24   pace, (4) evaluate the combined impact of plaintiff's physical and mental impairments, (5)

25   reevaluate plaintiff's credibility according to Social Security Ruling (SSR) 96-7p, and (6)

26   consolidate plaintiff's initial applications with her subsequent applications.  (Tr. at 479-81.)

On November 25, 2003, the ALJ dismissed plaintiff's request for a hearing on her subsequent applications.  (Tr. at 483.)

On March 15, 2004, the Appeals Council remanded the case to the ALJ for further hearing in accordance with the court's remand.  (Tr. at 482-84.)  The Appeals Council indicated that its action on the initial applications "renders the subsequent claims duplicate."  (Tr. at 483.) The ALJ was directed to consolidate the claims and issue a new decision.  (Id.)

On November 10, 2004, a hearing was held before the ALJ who held the first hearing, and plaintiff was again represented by counsel.  (Tr. at 485, 582-612.)  In a decision issued on January 19, 2005, the ALJ determined that plaintiff was not entitled to a period of disability or to benefits under Title II or Title XVI.  (Tr. at 302-16.)  In that regard, the ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's status post a partial pancreatectomy with residual keloid scarring, a depressive disorder and right shoulder strain are severe impairments, based upon the requirements in the Regulations (20 CFR §§ 404.1521 and 416.921).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

/////

7.    The claimant has the residual functional capacity to stand and walk for six hours during an eight-hour day and sit on an unlimited basis.  The claimant can lift and carry 20 pounds occasionally and 15 pounds frequently.  She is precluded from overhead lifting and must avoid very forceful pushing and pulling with the right upper extremity.  She should also avoid climbing ropes and scaffolds.  Due to her mental disorder, she is limited to simple unskilled work not involving complex or detailed instructions.

8.    The claimant's past relevant work as a mail clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9.    The claimant's medically determinable impairment does not prevent the claimant from performing her past relevant work or other jobs existing in the national economy including jobs as a parking lot attendant, cashier and office helper.

10.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e)(f) and 416.920(e)(f)).

(Tr. at 315-16.)

Plaintiff requested review of the ALJ's January 19, 2005 decision, but the Appeals Council declined review on September 28, 2005.  (Tr. at 297-99, 301.)  Plaintiff sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 28, 2005.  By order filed April 12, 2006, the Honorable Gregory G. Hollows declined to relate this case to case No. CIV S-03-0669 GGH.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4

conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson

v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the

evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the

five-step sequential evaluation process established under Title 20 of the Code of Federal

Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42

(1987).  This five-step process can be summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.

> Step two:  Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.

> Step three:  Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App. 1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If
> so, the claimant is not disabled.  If not, proceed to step five.

/////

1   Step five: Does the claimant have the residual functional capacity
    to perform any other work? If so, the claimant is not disabled. If
2   not, the claimant is disabled.

3   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

4          The claimant bears the burden of proof in the first four steps of the sequential

5   evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the

6   sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

7   (9th Cir. 1999).

8                                    **APPLICATION**

9          Plaintiff seeks a closed period of disability from May 2000, when she had surgery,

10  to August 2004, when she returned to work.

11         Plaintiff advances five arguments in her motion for summary judgment and/or

12  remand. First, plaintiff asserts that the ALJ failed to properly develop the record regarding her

13  depression. Second, plaintiff contends that the ALJ failed to consider all of her impairments in

14  determining whether she suffers from severe impairments. Third, plaintiff argues that the ALJ

15  failed to credit the opinions of her treating and consultative physicians without providing clear,

16  convincing, and legitimate reasons for doing so. Fourth, plaintiff maintains that the ALJ

17  improperly failed to credit her testimony regarding the nature and extent of her pain and her

18  functional limitations. Fifth, plaintiff argues that the ALJ erred when he failed to include all of

19  her limitations in the hypothetical question posed to the vocational expert. The court addresses

20  each argument below.

21  **I. Development of the Record**

22         An ALJ is not a "mere umpire" at an administrative hearing and has an

23  independent duty to fully develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir.

24  1992). In this case, the ALJ was specifically ordered to develop the record regarding plaintiff's

25  mental impairment, i.e., her depression. Of the five substantive provisions in the stipulation and

26  order remanding plaintiff's case, four provisions concern plaintiff's mental impairment. (Tr. at

6

479-80.)  The ALJ was required to (1) further evaluate the nature and severity of plaintiff's

mental impairment, (2) obtain a mental health examination with psychological testing and a

medical source statement regarding plaintiff's residual functional capacity, (3) consider the

effects of plaintiff's mental impairment on her ability to perform daily activities, to socially

interact, and to maintain concentration, persistence, and pace, and (4) evaluate the combined

impact of plaintiff's physical and mental impairments.  (Id.)

The order of the Appeals Council remanding the case to the ALJ reiterated the

requirements of the court's remand order, with specific reference to the ALJ's previous decision:

> The Administrative Law Judge noted that the claimant was not
> seeking mental health treatment for her complaints of depression.
> However, he did not ask her why she was not seeking psychiatric
> treatment or who had prescribed the Zoloft (Tr. 231, 226).  The
> decision does not indicate that the Administrative Law Judge
> considered the claimant's testimony that she was on General
> Assistance and had no money of her own (Tr. 51).  Pursuant to
> Social Security Ruling 96-7p, the Administrative Law Judge must
> not draw inferences about an individual's symptoms and their
> functional effects from a failure to seek or pursue regular medical
> treatment without first considering any explanations that the
> individual may provide.  The Administrative Law Judge noted that
> Dr. Bermudez reported that the claimant was alert and cooperative
> (Tr. 227).  However, Dr. Bermudez was conducting a physical
> examination, not a mental health examination.  At the end of the
> hearing, the claimant's representative requested a consultative
> examination to evaluate the claimant's depression (Tr. 51).
> Although the Administrative Law Judge indicated that a request
> could be made, he never sent the claimant for a mental
> examination.

(Tr. at 482-83.)

The court finds that the ALJ's second decision demonstrates a substantial failure

to comply with the orders of the district court and the Appeals Council.  First, although plaintiff's

medical records reflect the ongoing administration of medication for depression from 2001 to

2004, the section of the ALJ's decision titled "Evaluation of the Evidence" contains no mention

of these records.  (Compare tr. at 378, 399, 402, 446-47, 462, 464, 468-69, 472-73, 476, 478, 538

with tr. at 306-09.)  The same section of the decision does include a summary of the

1  psychological disability evaluation conducted by Dr. Rohrer in August 2004, which the ALJ

2  obtained in compliance with the remand order.  However, both the disability evaluation and the

3  ALJ's summary of the evaluation focus solely on plaintiff's condition at the time of the

4  evaluation in 2004 and shed no light on plaintiff's mental impairment during the relevant period

5  from 2001 to 2004.  (See tr. at 309.)

6          In the next section of the ALJ's second decision, titled "Sequential Evaluation,"

7  the ALJ identifies "mood disorder" as one of plaintiff's severe impairments but finds no evidence

8  of marked limitations in functioning such that the impairment meets the criteria of Listing 12.04.

9  (Tr. at 310.)  The ALJ makes two passing references to depression in the context of his duty to

10  consider all symptoms consistent with objective medical evidence and the requirements of SSR

11  96-7p:  "At the first hearing, the claimant testified that she took medications for hypertension and

12  depression. . . .  The claimant testified she was not rested after sleeping and is depressed about

13  her inability to work."  (Tr. at 311.)[2]  However, aside from these passing references, the ALJ

14  addressed the four areas of inquiry required by the remand order in but two paragraphs of his

15  decision.  (Tr. at 313-14.)

16          In the second of the two paragraphs, the ALJ discusses Dr. Rohrer's psychological

17  evaluation, accepts Dr. Rohrer's conclusions regarding plaintiff's mental status in August 2004,

18  and rejects Dr. Rohrer's observations concerning plaintiff's impaired ability to work full time

19  due to health issues and difficulty tolerating tasks and maintaining attention due to right arm

20  pain.  (Tr. at 313-14.)

21  /////

22  /////

23  _____

24  [2] As noted above, the stipulated to remand order required the ALJ to engage in: (1) further
evaluation of the nature and severity of plaintiff's mental impairment, (2) discussion of plaintiff's
residual functional capacity in light of a mental health examination and psychological testing, (3)

25  consideration of the effects of plaintiff's mental impairment on her ability to perform daily
activities, socially interact, and maintain concentration, persistence, and pace, and (4) evaluation

26  of the combined impact of plaintiff's physical and mental impairments.

1    The first of the two paragraphs is set forth below:

2        In determining the claimant's residual functional capacity, the
         undersigned must evaluate any mental disorders.  At the first
3        hearing in this matter, the claimant testified she was taking
         medication for symptoms attributable to depression.  The claimant
4        also testified that she had not sought psychological counseling or
         psychiatric treatment for her complaints.  In June 2001, the
5        claimant reported increased frustration with her medical condition
         but her attention and concentration were intact and she was
6        oriented and neatly groomed.  (Exhibit 7F, p. 44.[3])  Progress notes
         from August 2001 describe the claimant as clearly frustrated and
7        depressed.  (Exhibit 7F, p. 36.[4])  However, by June 2002, Dr.
         Bermudez did not detect any signs of depression and noted the
8        claimant was an alert and cooperative woman.  (Exhibit 5F, p. 2.[5])

9    (Tr. at 313.)  Just as he did in the first decision, the ALJ has again noted that plaintiff did not

10   seek mental health treatment for her complaints of depression, has again failed to develop the

11   record as to who prescribed medications for plaintiff's depression and why plaintiff did not seek

12   treatment, has again failed to indicate that he considered plaintiff's inability to pay for treatment,

13   has again failed to comply with SSR 96-7p by drawing inferences about plaintiff's symptoms and

14   their functional effects from her failure to seek treatment, without considering any explanations

15   plaintiff might provide, and has again stated that Dr. Bermudez did not detect any signs of

16   depression and found plaintiff alert and cooperative, despite the fact that Dr. Bermudez was

17   conducting a physical examination, not a mental health examination, and merely noted plaintiff

18   was "in no acute distress."  (See Tr. at 227.)

19       The ALJ failed to develop the record and failed to make findings concerning the

20   severity of plaintiff's depression between May 2000, when she became unable to work (tr. at 75),

21   and August 2004, when she returned to work (tr. at 591, 604).  Although a mental health

22   examination was obtained, the ALJ did not consider the effects of plaintiff's mental impairment

23

24       [3]  (Tr. at 285.)

25       [4]  (Tr. at 277.)

26       [5]  (Tr. at 227.)

on her ability to perform daily activities, socially interact, and maintain concentration, persistence, and pace during the period from May 2000 and August 2004, and did not evaluate the combined impact of plaintiff's physical and mental impairments during that time.  Although the ALJ cites SSR 96-7p, his reevaluation of plaintiff's credibility consisted merely of comparing plaintiff's testimony on July 11, 2002, with her testimony at the hearing on November 10, 2004, despite the fact that by the latter date plaintiff had returned to work.

Because the ALJ failed to develop the record as required by the remand orders of this court and the Appeals Council, reversal of the Commissioner's decision is required.

## II.  Consideration of All Impairments at Step Two

At step two of the sequential evaluation the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairments are so slight that it is unlikely the claimants would be disabled even if age, education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. § 404.1521(a).

Here, the ALJ found that plaintiff suffered from the following severe impairments, all of which significantly affect her ability to perform the physical demands of basic work: plaintiff's status post a partial pancreatectomy with residual keloid scarring, right shoulder strain, and mood disorder.  (Tr. at 310.)  Plaintiff argues that the ALJ should have included plaintiff's arthritis and depression as severe impairments at step two.

The ALJ's analysis reflects that the "mood" disorder included as a severe impairment at step two is the depressive disorder diagnosed by Dr. Rohrer.  (See tr. at 310, 529.) The analysis also reflects that the right shoulder "strain" included as a severe impairment at step

two, referred to more generally as plaintiff' "right shoulder problems," refers to or includes arthritis in the right shoulder.  (See tr. at 310, 542.)  Accordingly, plaintiff has not demonstrated that the ALJ erred at step two of the sequential evaluation by omitting severe impairments that should have been included at that step.

**III.  Consideration of the Opinions of Treating and Consultative Physicians**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Id.  This is so because a treating doctor has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen, 80 F.3d at 1285.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).[6]  Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician.  Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir.1995); see also 20 C.F.R. § 416.927(d)(1).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  If the treating professional's opinion is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

---

[6]  Of course, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

1    Here, plaintiff argues that the ALJ's decision fails to acknowledge, much less

2    assess or weigh, the opinions of plaintiff's treating physicians inherent in their more than three

3    years of treatment of plaintiff for the debilitating pain caused by plaintiff's damaged pancreas,

4    partial pancreatectomy, and resultant keloid scarring.  Defendant responds that it is the plaintiff's

5    burden to demonstrate in what way the ALJ erred.  Here, defendant contends, plaintiff fails to

6    identify any medical opinion from plaintiff's treating physicians that the ALJ failed to adequately

7    address.  Defendant contends that with respect to the opinion of consultative examining

8    physician Dr. Bermudez, the ALJ provided sufficient reasons for rejecting Dr. Bermudez's

9    opinion regarding plaintiff's limitations.

10    The ALJ states in his second decision that he reviewed the entire record and

11    accorded "significant weight to the findings of the consultative examiners who determined the

12    claimant retains the ability to perform essentially a full range of light work."  (Tr. at 310-11.)

13    The ALJ cited the reports of consultative examining physicians Rita B. Bermudez, M.D., in 2002

14    and Steve McIntire, M.D., in 2004.  (Tr. at 311 (citing Ex. 5F, tr. at 226-30, & Ex. 8F, tr. at 516-

15    24).)  The ALJ found that none of plaintiff's treating physicians, including her surgeon and her

16    pain specialist, had "declared the claimant is precluded from all work activities or that she is

17    totally disabled" and that the treating physicians' progress notes failed to document any

18    recommended activity modification or other restrictions on plaintiff's ability to work.  (Tr. at

19    311.)  However, the ALJ also declined to credit some of plaintiff's restrictions as found by Dr.

20    Bermudez because she "accepted the claimant's subjective statements of pain."  (Id.)

21    With respect to plaintiff's treating physicians, the treatment records document the

22    development of plaintiff's pancreas condition, the operation performed to correct the condition,

23    the formation of painful keloid scarring at the site of the incision, two operations performed to

24    correct the keloid scarring, various pain management techniques that were unsuccessful, and the

25    series of injections that finally proved successful in treating plaintiff's condition.  (Tr. at 153-55,

26    157, 159, 164-66, 174-75, 180-81, 184, 186, 192, 201, 215, 231-33, 242, 248-49, 263, 266, 271-

72, 277, 284, 286, 288, 291, 294, 441, 443, 445-66, 468, 472, 476, 478.)  The records also document the development and treatment of plaintiff's right shoulder pain.  (Tr. at 464, 542-45, 549, 551, 554-55.)  The treatment records are devoid of any suggestion that plaintiff's treating physicians believed her pain was imagined or exaggerated.  A reasonable inference to be drawn from the extensive medical treatment for pain and depression is that the treating physicians believed plaintiff suffered from severe pain.  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) ("We do not draw a distinction between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability.")  However, defendant is correct that plaintiff's counsel on remand at no time presented any evidence of the treating physicians' opinions regarding the effect of the conditions they were treating upon plaintiff's ability to work or to perform work-related tasks.  Plaintiff's counsel certainly had the opportunity to do so.  Given that failure of proof, the court cannot find that the ALJ erred in his consideration of the treating physicians' opinions.  Because plaintiff's counsel failed to have the treating physicians address the subject, the ALJ accurately observed that those treating physicians had not expressed an opinion that plaintiff was precluded from all work activities.

The ALJ's treatment of the opinion of consultative examining physician Dr. Bermudez is, however, a different matter.   Dr. Bermudez conducted a disability evaluation of plaintiff in June 2002, while plaintiff's physicians were still searching for a successful treatment for plaintiff's pain.  Dr. Bermudez noted that plaintiff's chief complaint was pain in the stomach area, and she recorded the following history:  plaintiff had a partial pancreatectomy in May 2000 to repair her pancreas; her incision had been hurting ever since; she had a revision of the incision in November 2000; she had another revision of the incision in December 2001, but the scar continued to hurt; the scar hurt worse when touched or pulled; prolonged walking, standing, bending, twisting, and driving made the pain worse; sometimes plaintiff felt a stabbing pain when simply sitting and had to hold her stomach to make it feel a little better.  (Tr. at 226.)  Dr. Bermudez observed that plaintiff was alert and cooperative, was in no acute distress, was able to

13

1    sit in a chair for 20 minutes, was able to move on and off the exam table with some difficulty,

2    moved slowly and grimaced frequently, particularly when moving from supine to sitting, and was

3    able to get onto the exam table without assistance.  (Tr. at 227.)  During examination of

4    plaintiff's upper and lower extremities, plaintiff reported pain in her stomach; during

5    examination of plaintiff's spine, motion of the neck and spine was performed slowly and plaintiff

6    reported pain in her stomach; plaintiff walked with a slow gait and acted cautious; plaintiff was

7    tender to palpation over the upper abdominal region and was sensitive to light touch over the

8    proximal end of her abdominal scar; the scar was about 10 inches long with notable keloid

9    formation.  (Tr. at 228-29.)  Dr. Bermudez diagnosed a history of stomach pain from keloid scar

10   and found that (1) plaintiff developed a keloid that became painful, (2) ultrasound did not reveal

11   the etiology of the pain, (3) cortisone injections into the scar site were given, (4) plaintiff

12   continued to suffer constant pain that prohibited most activities, (5) it was not clear why the scar

13   was so intensely painful, (6) the area of the scar demonstrated no erythema or increased warmth

14   suggesting infection, and (7) there was no evidence to suggest that movement should cause any

15   further trauma to her scar or further injury to her.  (Tr. at 230.)  Dr. Bermudez concluded that

16   plaintiff's ability to sit was not limited, plaintiff could stand or walk for 4 hours intermittently in

17   an 8 hour day, plaintiff could bend or reach occasionally, and plaintiff should be limited to lifting

18   25 pounds occasionally and 10 pounds frequently.  (Id.)  It appears that Dr. Bermudez based her

19   conclusions concerning plaintiff's restrictions in 2002 on her own observations and on the

20   treatment records of plaintiff's treating physicians as well as plaintiff's subjective complaints of

21   pain.

22          The ALJ appears to have simply ignored those aspects of examining physician Dr.

23   Bermudez's opinion with which he disagreed, choosing instead to rely on the opinion of

24   examining physician Dr. McIntire in those areas.  See Hamlin v. Barnhart, 365 F.3d 1208, 1219

25   (10th Cir. 2004) ("An 'ALJ may not pick and choose which aspects of an uncontradicted medical

26   opinion to believe, relying on only those parts favorable to a finding of nondisability.'")

1    However, Dr. McIntire conducted only a neurological evaluation of plaintiff and not until July

2    2004, after the pain caused by plaintiff's keloid scar had been successfully resolved.  At that late

3    date, Dr. McIntire noted that plaintiff had previously complained of persistent pain about the

4    abdominal scar that resulted from her partial pancreatectomy, that she underwent revision of the

5    scar, and that she underwent injections of anesthetics into the scar which reduced her pain to

6    discomfort caused by occasional itching.  (Tr. at 516, 519.)  Notably, Dr. McIntire's opinion

7    concerned solely plaintiff's condition in 2004 and thereafter.  In the end, the ALJ rejected the

8    limitations found by Dr. Bermudez solely on the basis that, in his opinion, those limitations were

9    found by the examining physician based solely on plaintiff's subjective complaints which the

10   ALJ found not to be credible. (Tr. at 311.)   However, for the reasons set forth below, the ALJ's

11   premise was in error.

12          The court finds that the ALJ failed to provide clear and convincing reason for

13   rejecting the opinions of examining physician Dr. Bermudez with respect to the limitations

14   caused by plaintiff's condition during the relevant period of time.   Because the ALJ erred in his

15   treatment of the opinions of examining physicians, the Commissioner's decision must be

16   reversed.

17   **IV.  Credibility of Plaintiff's Testimony**

18          It is well established that the determination of credibility is a function of the ALJ,

19   acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

20   An ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler,

21   779 F.2d 528, 531 (9th Cir. 1985).  Thus, questions of credibility and resolution of conflicts in

22   the testimony are usually deemed functions solely of the Commissioner.  Morgan, 169 F.3d at

23   599.  It is also well established that, in evaluating a claimant's subjective testimony regarding

24   pain and the severity of the claimant's symptoms, an ALJ may consider the presence or absence

25   of supporting objective medical evidence along with other factors.  See Bunnell v. Sullivan, 947

26   F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285.  Ordinary techniques

1  of credibility evaluation may be employed, and the adjudicator may take into account prior

2  inconsistent statements or a lack of candor by the witness.  See Fair v. Bowen, 885 F.2d 597, 604

3  n.5 (9th Cir. 1989).

4  Nonetheless, an ALJ's decision to reject a claimant's subjective testimony

5  regarding the severity of his symptoms must be supported by specific findings.  Morgan, 169

6  F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770

7  F.2d 845, 848 (9th Cir. 1985)).  "Without affirmative evidence showing that the claimant is

8  malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

9  and convincing."  Morgan, 169 F.3d at 599.  Once a claimant has presented medical evidence of

10  an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity

11  of symptoms merely because the symptoms are unsupported by objective medical evidence.

12  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789,

13  792 (9th Cir. 1997).  Rather, "'the ALJ can reject the claimant's testimony about the severity of

14  [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"  Light, 119

15  F.3d at 792 (quoting Smolen, 80 F.3d at 1281).  See also Reddick, 157 F.3d at 722.  Although the

16  ALJ may rely, in part, on his or her own observations, see Han v. Bowen, 882 F.2d 1453, 1458

17  (9th Cir. 1989), the ALJ cannot substitute such observations for medical diagnosis, Marcia v.

18  Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

19  Here, the ALJ decided in 2002 that plaintiff's testimony was not credible because

20  the medical evidence failed to support "the existence of a medically determinable physical

21  impairment that could produce the levels of pain alleged by the claimant." (Tr. at 13.)  The ALJ

22  decided in 2005 that plaintiff could not be found "fully credible" on the basis of perceived

23  inconsistencies in plaintiff's testimony and, again, on the ground that there was no medical

24  evidence of medically determinable physical impairments that could reasonably be expected to

25  produce the symptoms alleged. (Tr. at 312.)

26  /////

1        The ALJ has not offered clear and convincing reasons for finding plaintiff less

2   than fully credible.  The alleged inconsistencies are not supported by the record, and the medical

3   records do in fact document impairments that might reasonably be expected to cause symptoms

4   of severe pain and functional limitations.  Plaintiff was diagnosed on March 9, 2000, as suffering

5   from chronic pancreatitis with complications, and surgery was recommended.  (Tr. at 215.)  The

6   surgery was performed on May 3, 2000.  (Tr. at 201.)  Thereafter plaintiff suffered abdominal

7   pain caused by keloid scarring that resulted from the surgery.  Plaintiff was treated continuously

8   for pain and depression.  The records summarized supra show that plaintiff's pain grew

9   progressively worse, was resistant to numerous types of treatment, and was not relieved until

10  plaintiff was given a series of injections administered between November 2002 and May 2003.

11  Plaintiff also suffered episodic right shoulder pain that was treated from July 2003 to June 2004,

12  when the shoulder condition was diagnosed as arthritis of the right shoulder and plaintiff was

13  given a steroid injection.  Plaintiff returned to work in August 2004.

14       A keloid is

15      [a] nodular, firm, movable, nonencapsulated, often linear mass of
    hyperplastic scar tissue, tender and frequently painful, consisting of
16  wide irregularly distributed bands of collagen; occurs in the dermis
    and adjacent subcutaneous tissue, usually after trauma, surgery, a
17  burn, or severe cutaneous disease such as cystic acne, and is more
    common in blacks.[7]

18

19  Stedman's Medical Dictionary 216510 (27th ed. 2000) (emphasis added).  Keloids can grow for

20  years, may cause disfigurement, may result in constant pain and local irritation if nerve fibers

21  become tangled in the overgrown tissue, and may produce anxiety.  Brock v. Wright, 315 F.3d

22  158, 162 (2d Cir. 2003).  See also Simmons v. Correctional Medical Servs., No. 1:05-cv-744,

23  2006 WL 2528433, at *5-6 (W.D. Mich. Aug. 31, 2006) (finding that the plaintiff had formed a

24  keloid that caused him throbbing and burning pain as well as anxiety).  Keloids can burn or itch

25

26      [7] Plaintiff is African American and therefore at greater risk for keloids.  (Tr. at 525.)

17

1   and may also interfere with sleep.  Harris v. Winslow, No. C 04-3350 SI (pr), 2006 WL 1096011,

2   at *2 & 4 (N.D. Cal. Apr. 25, 2006).  Articles cited by plaintiff demonstrate that keloids are often

3   symptomatic, that complaints arise because of tenderness and pain, and that complications of

4   keloids are often severe and frustrating due to the length of time required for recovery.  (Pl.'s

5   Mot. for Summ. J. at 25-26, 30.)

6        Moreover, the ALJ has mischaracterized the medical records as showing that there

7   was no medical basis for plaintiff's complaints of persistent pain.  (Tr. at 312.)  In fact, the

8   medical records demonstrate that the treating physicians ruled out abscesses, infection, and

9   incisional hernia as causes for plaintiff's pain and concluded that the scar itself was the source of

10  the pain.  (Tr. at 242.)  Likewise, the ALJ has mischaracterized the conclusions of Dr. Bermudez,

11  contending that her examination found no evidence suggestive of active infection "or any other

12  etiology for [plaintiff's] complaints."  (Tr. at 312.)  While Dr. Bermudez noted the etiologies that

13  had been ruled out by treating physicians and found no evidence of active infection during her

14  examination, she did not conclude that there was no evidence of any etiology for plaintiff's pain.

15  (Tr. at 230.)  Although the ALJ cites numerous routine notations in the medical records reflecting

16  that plaintiff was not in acute distress on particular dates, he does not explain why a person with

17  chronic pain should have displayed acute distress on those particular days.[8]

18       For the reasons set forth above, the court finds that the ALJ failed to offer

19  specific, clear and convincing reasons for rejecting plaintiff's statements about the severity of her

20  symptoms.  By improperly rejecting plaintiff's statements, and having failed to properly consider

21  the opinions of examining physicians, the ALJ erroneously concluded that plaintiff had the

22  residual functional capacity at all times between 2000 and 2004 to perform the full range of light

23  /////

24

25       [8] This appears to be yet another example of the ALJ's misinterpretation of the medical
    evidence.  "Acute" refers to diseases and conditions "with rapid onset and a short, severe
26  course."  Stedman's Medical Dictionary 14 (1995).

1   work and to return to her former employment as a mail clerk.  (Tr. at 314.)  The Commissioner's

2   decision must be reversed and plaintiff's testimony must be credited.

3   **V.  Inclusion of All Limitations in the Hypothetical**

4           Plaintiff also argues that the ALJ failed to include all of her limitations in the

5   hypothetical question posed to the vocational expert.  Specifically, she contends that the ALJ

6   failed to include in the hypothetical the impact of plaintiff's severe pain, fatigue, lack of

7   concentration, need to lie down, and postural limitations.

8           At step five of the sequential evaluation, the ALJ is required to question a

9   vocational expert in a manner that properly takes into account the limitations on the plaintiff's

10  abilities to engage in various work-related functions.  See Holohan v. Massanari, 246 F.3d 1195,

11  1208-09 (9th Cir. 2001).  "While the ALJ need not include all claimed impairments in his

12  hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the

13  claimant's subjective complaints not included in the hypothetical."  Light, 119 F.3d at 793.

14          Here, the ALJ improperly discounted plaintiff's credibility concerning the severity

15  of her symptoms.  The hypothetical posed by the ALJ should have incorporated plaintiff's severe

16  pain and related limitations.  However, the record reflects that plaintiff's attorney asked the

17  vocational expert whether the person described by the ALJ for purposes of the hypothetical

18  question would be able to work full time if that person required unscheduled breaks to sit, hold

19  her stomach, and rock in pain for up to half an hour.  (Tr. at 607-08.)  The vocational expert

20  responded that there were no positions available where such conduct would be tolerated.  (Id..)

21  Accordingly, the ALJ's error at step five of the sequential evaluation is rendered moot by

22  counsel's extension of the hypothetical to account for plaintiff's pain, as well as by the

23  conclusion reached by the court and set forth below.

24                                        **CONCLUSION**

25          The decision whether to remand a case for additional factual findings or to simply

26  award benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304

1   (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  In this regard, the Ninth

2   Circuit Court of Appeals has stated that, "'[g]enerally, we direct the award of benefits in cases

3   where no useful purpose would be served by further administrative proceedings, or where the

4   record has been thoroughly developed.'"  Ghokassian, 41 F.3d at 1304 (quoting Varney v. Sec'y

5   of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  See also Rodriguez v. Bowen,

6   876 F.2d at 763 ("[R]emanding this case for further administrative proceedings would serve no

7   useful purpose; rather, it would merely delay the award of benefits.")  This rule recognizes the

8   importance of expediting disability claims.  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir.

9   2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.  When an ALJ's ruling is not

10  supported by substantial evidence, a reviewing court may remand the case solely for calculation

11  of benefits or for further development of the record.  See Rosa v. Callahan, 168 F.3d 72, 82-83

12  (9th Cir. 1999).  The former course is appropriate when the reviewing court has "no apparent

13  basis to conclude that a more complete record might support the Commissioner's decision."  Id.

14  at 83.  In addition, where the ALJ improperly rejects a claimant's testimony regarding his or her

15  limitations, and the claimant would be disabled if his or her testimony were credited, the

16  testimony is to be credited as a matter of law and the case is not to be remanded solely to allow

17  the ALJ to make specific findings concerning the testimony.  Lester, 81 F.3d at 834; see also

18  Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (remanding for award of benefits where the

19  ALJ erroneously rejected plaintiff's subjective pain testimony).

20          In this case, plaintiff initially filed her first application almost seven years ago.

21  The matter was remanded pursuant to stipulation and order with instructions over three years

22  ago.  The ALJ failed to conduct the further hearing in accordance with the court's remand order

23  and the instructions of the Appeals Council.  Moreover, in light of the vocational expert's

24  testimony in response to the supplemented hypothetical question posed by plaintiff's counsel, if

25  plaintiff's own testimony regarding the severity of her symptoms during the relevant time period

26  is properly credited plaintiff was unemployable and disabled for the closed period between May

2000 and August 2004.  Under these circumstances, no useful purpose would be served by delaying this matter any further for additional administrative proceedings.  The case will be remanded solely for calculation of benefits.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment and/or for remand is granted;

2.  Defendant's cross-motion for summary judgment is denied;

3.  The decision of the Commissioner of Social Security is reversed; and

4.  This case is remanded to the Commissioner solely for calculation of benefits.

DATED: March 28, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/white2407.order

21